**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMSC-005**

**Filing Date: January 21, 2011**

**Docket No. 31,738**

**In the Matter of Esther V., a child,**

**STATE OF NEW MEXICO, ex rel.**
**CHILDREN, YOUTH AND FAMILIES DEPARTMENT,**

      **Petitioner-Petitioner and Cross-Respondent,**

**v.**

**MARLENE C.,**

      **Respondent-Respondent and Cross-Petitioner.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Louis E. DePauli, Jr., District Judge**

New Mexico Children, Youth & Families Department
Rebecca J. Liggett
Santa Fe, NM

for Petitioner and Cross-Respondent

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Respondent and Cross-Petitioner

**OPINION**

**DANIELS, Chief Justice.**

**{1}**    This case addresses the relationship between the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963 (2006), which sets "minimum Federal standards for the removal of Indian children from their families," § 1902, and the New Mexico Abuse and Neglect Act, NMSA 1978, Sections 32A-4-1 to -34 (1993, as amended through 2009), which

1

governs the State's transfer of custody of a child in cases of abuse or neglect. More specifically, we are asked to determine when and how a district court in an abuse and neglect proceeding must make the two factual findings required by § 1912(d) and (e) of ICWA. Subsection 1912(d) provides,

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Subsection 1912(e) provides,

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

**{2}** In this case, the district court entered an order finding that Marlene C. (Mother) neglected her month-old baby (Child) and gave legal custody to the Children, Youth and Families Department (CYFD). Mother appealed, arguing that the district court failed to make the factual findings required by § 1912(d) and (e) of ICWA at the adjudicatory hearing. *State ex rel. Children, Youth & Families Dep't v. Marlene C.*, 2009-NMCA-058, ¶¶ 1, 10, 14, 146 N.M. 588, 212 P.3d 1142. The Court of Appeals reversed the adjudication of neglect, holding that CYFD failed to prove the § 1912(e) requirement by clear and convincing evidence as required by the statute. *Id.* ¶¶ 18, 20. The Court of Appeals did not decide whether the findings required by § 1912(d) and (e) must always be made at the adjudicatory hearing. *See id.* ¶ 14. We hold that, in a contested adjudication to which ICWA applies, the district court must always make the findings of fact required under § 1912(d) and (e) of ICWA at the adjudication stage, founded either on evidence of record or admissions supported by a factual basis. We therefore reverse the district court's adjudication of neglect and remand to that court for further hearing.

## I. BACKGROUND

**{3}** Mother, a member of the Navajo Nation, and Child, who is eligible for enrollment in the Navajo Nation, were living with a Gallup-based family pursuant to a safety contract with CYFD in which the family agreed to provide a residence for Mother and Child and "ensur[e] the child's safety." Child's father (Father) was incarcerated at the time. On August 21, 2007, CYFD received a referral indicating that the safety-contract family no longer wanted to help Mother and Child because Mother "was causing family discord, making [false] allegations, leaving with the baby on foot and in the extreme heat, and bringing items into the home that [were] against [the family's] religious beliefs."

2

**{4}** In response to the referral, CYFD immediately faxed to the district court a petition alleging abuse and neglect, a motion for an ex parte custody order with a supporting affidavit, and a proposed ex parte custody order to be signed by the district judge. CYFD's petition alleged that Mother and Father neglected Child, contrary to Section 32A-4-2(E)(4), "in that [they] are unable to discharge their responsibilities to and for [C]hild because of incarceration, hospitalization or other physical or mental disorder or incapacity," and that Mother and Father abused Child, contrary to Section 32A-4-2(B)(1), "in that [C]hild has suffered or is at risk of suffering serious harm because of the action or inaction of the child's parent, guardian or custodian." The petition also noted that ICWA applies to Child because Child is Native American. The supporting affidavit contained facts to establish probable cause that Child was abused or neglected, and it stated that "reasonable and active efforts ha[d] been made to avoid removal of the child from the home."

**{5}** The district court signed the submitted ex parte custody order within ten minutes of receiving CYFD's request, thereby commanding the immediate removal of Child from Mother's care, granting "legal and physical custody of the child" to CYFD, and appointing a guardian ad litem for Child. The district court's order found that there was "probable cause to believe that . . . [C]hild [was] abused or neglected," that CYFD custody was "necessary," and that CYFD had made "active efforts . . . to avoid removal of [C]hild from the home."

**{6}** On August 24, 2007, the district court appointed counsel to represent Mother, and, on August 27, the court set a custody hearing within ten days of the ex parte order as required by Section 32A-4-18(A). In response to CYFD's abuse and neglect petition, Mother's counsel filed a response denying "all allegations of neglect or abuse" and disputing that CYFD made "reasonable efforts . . . to avoid removing the child." The temporary custody hearing was postponed several days to accommodate the various parties and the excusal of the district court judge and was ultimately held on September 12, 2007.

**{7}** At the thirty-minute custody hearing, counsel for Mother asked the court to allow him five minutes to consult with Mother before the hearing began, explaining that he had not had an opportunity to talk to his client. After conferring with counsel, Mother neither renewed her denial of the alleged abuse and neglect nor challenged the portion of CYFD's affidavit that stated CYFD had made active and reasonable efforts to keep the family together. Instead, she stipulated to temporary CYFD custody of Child pending the adjudicatory hearing, which was scheduled for October 5, 2007. The court verified Mother's understanding of the stipulation in open court as follows:

> Judge: . . . We are here today for a hearing to determine whether or not reasonable grounds exist to allow the State of New Mexico to keep your child and take legal custody of your child. . . . If you want a hearing, you can have a hearing to dispute that there is not reasonable grounds for the government to keep your child from you. . . . Do you understand?

Mother:        Yes.

Judge:  Are you willing to give up that right?

Attorney:        In other words, are you willing to not have a hearing today, but to say okay, they can keep the child on a temporary basis?

Mother:        No, I want to get them back.

Attorney:        I understand you want to get them back. The question is do you want a hearing today on whether you should have them temporarily back now. Because you're going to have a hearing later on what's called an adjudication. Do you understand that?

Mother:        Yes.

Attorney:        Temporarily they're going to be with the State, understand? You're going to have visitation. I think she understands, your honor.

Judge: Alright. So with your permission, we will not have a hearing to determine whether or not at this time you should get your kids back. We're not going to have that hearing. Do you understand that?

Mother:        Yes. . . .

Judge: And . . . down the line we can have a further hearing called an adjudication to see if your child will remain with the State for a longer period of time. We're not going to have that right now. Do you understand that?

Mother:        Um-hum.

**{8}**     The court then signed the stipulated order, which stated that "[t]here is probable cause to believe that the [parents] are not able to provide adequate supervision and care for the child" and that "[c]lear and convincing evidence exists to believe that continued custody of the child by the parent or guardian is likely to result in serious emotional or physical damage to the child." Mother did not contest the findings contained in the stipulated order.

**{9}**     The district court held an adjudicatory hearing on October 29 and November 28. Father did not contest the proceedings, but Mother disputed the allegations of abuse and neglect. Relying on Mother's earlier stipulation and the ex parte custody order, CYFD did not present "qualified expert testimony" as required by § 1912(e) of ICWA or otherwise address the § 1912 requirements at the adjudicatory hearing. At the close of the hearing, the judge dismissed the abuse allegation but found neglect on the part of Mother. The judge's written order stated that "[t]he Court finds by clear and convincing [evidence that Mother]

4

has neglected the child . . . in that [she] is unable to discharge [her] responsibilities to and for the child because of incarceration, hospitalization or other physical or mental disorder or incapacity; and a factual basis exists to support this finding."

**{10}**     Mother appealed to the Court of Appeals, arguing that the requirements of § 1912(d) and (e) of ICWA were not satisfied. *Marlene C.*, 2009-NMCA-058, ¶¶ 4, 14. Mother argued that the "active efforts" finding required by § 1912(d) and the "likely to result in serious . . . damage" finding required by § 1912(e) must be made at the adjudicatory stage of the abuse and neglect proceedings. *Marlene C.*, 2009-NMCA-058, ¶¶ 13-14. CYFD countered "that Mother failed to preserve her ICWA challenges for review . . . and, in the alternative, that the district court made the requisite findings" before the adjudicatory hearing, thereby satisfying § 1912(d) and (e). *Id.* ¶ 4.

**{11}**     Although Mother raised CYFD's failure to satisfy § 1912(d) and (e) for the first time on appeal, the Court of Appeals allowed her challenge pursuant to § 1914 of ICWA, which provides in relevant part that "any parent or Indian custodian from whose custody [an Indian] child was removed . . . may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of [S]ections 1911, 1912, and 1913 of this title." *Marlene C.*, 2009-NMCA-058, ¶¶ 5-6 (alteration in original) (internal quotation marks omitted). CYFD does not renew its preservation argument before this Court.

**{12}**     On the merits of Mother's appeal, the Court of Appeals agreed with CYFD that § 1912(d)'s requirement that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" was satisfied by the ex parte custody order, in which the district court stated that CYFD had made "active efforts . . . to avoid removal of [C]hild from the home." *See id.* ¶ 17. The Court of Appeals disagreed, however, with CYFD's contention that Mother stipulated to the finding required by § 1912(e) by signing the temporary custody order, which stated that "[c]lear and convincing evidence exists to believe that continued custody of [C]hild by the parent or guardian is likely to result in serious emotional or physical damage to [C]hild." *Marlene C.*, 2009-NMCA-058, ¶ 13 (alterations in original) (internal quotation marks omitted). The Court reasoned that CYFD did not and could not "prove its case under Section 1912(e)" at the temporary custody hearing because Mother's consent at that hearing transformed it into a "voluntary proceeding" pursuant to § 1913(a), rendering § 1912's requirements for involuntary proceedings inapplicable at that stage. *See Marlene C.*, 2009-NMCA-058, ¶¶ 15, 18; 25 U.S.C. § 1913(a) (providing requirements for valid parental consent to foster care placement or termination of parental rights). Because Mother voluntarily consented to temporary custody pending adjudication, the Court of Appeals held that CYFD was obligated to establish at the adjudicatory hearing the likelihood of serious damage through the presentation of qualified expert testimony as required by § 1912(e). *See Marlene C.*, 2009-NMCA-058, ¶ 17.

**{13}**     CYFD petitioned this Court for review of the Court of Appeals opinion, and Mother

5

cross-petitioned. We granted both petitions for certiorari to review three issues: (1) did the Court of Appeals err by holding that Mother's consent to temporary custody pending the adjudicatory hearing transformed the involuntary custody hearing into a voluntary proceeding governed by § 1913 of ICWA; (2) in a contested adjudication, does the trial court always need to make the factual findings required by § 1912(d) and (e) of ICWA at the adjudicatory hearing on abuse and neglect, or can those findings be made at an earlier stage of the proceedings; and (3) if the § 1912(d) and (e) findings must be made at the adjudication stage, should we reverse the adjudication and dismiss the petition for lack of proof, or should we remand for additional proceedings in which that proof may be presented?

## II. DISCUSSION

### A. Standard of Review

**{14}** The interpretation of ICWA and its relationship to our state statute on abuse and neglect present questions of law that we review de novo. *See Cherino v. Cherino*, 2008-NMCA-024, ¶ 7, 143 N.M. 452, 176 P.3d 1184 ("[T]he applicability of the ICWA requires us to interpret statutory language, which is . . . subject to de novo review."); *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 24, 141 N.M. 692, 160 P.3d 601 (interpreting the Abuse and Neglect Act de novo).

**{15}** Our overarching goal when interpreting ICWA is to effectuate Congress's intent. The text of ICWA is the primary indicator of congressional intent, and to the extent that the language of the statute is "clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). Where a statute is ambiguous, we seek a construction that will harmonize all relevant statutory provisions and avoid absurd results. *See State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (explaining that statutory construction must be done in a manner that avoids absurd results); *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 (noting that statutory subsections "must be considered in reference to the statute as a whole" (internal quotation marks and citation omitted)).

### B. The Purpose and Policy of ICWA

**{16}** Congress enacted ICWA upon finding that "an alarmingly high percentage of Indian families" were broken up by the often unwarranted removal and placement of Indian children in "non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). Congress noted that "there is no resource . . . more vital to the continued existence and integrity of Indian tribes than their children" and that the states, through their administrative and judicial bodies, "have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian . . . families." § 1901(3), (5). In light of those historic facts, Congress enacted ICWA to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the

establishment of minimum Federal standards for the removal of Indian children from their families."  § 1902.

**{17}**    ICWA is a remedial statute in that it was enacted to stem the "alarmingly high percentage of Indian families" being separated by removal of children through custody proceedings.  § 1901(4).  We interpret remedial statutes "liberally to facilitate and accomplish [their] purposes and intent."  *State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 808, 737 P.2d 1180, 1185 (Ct. App. 1987).  Furthermore, "statutes enacted for the benefit of Indians must be liberally construed with all doubts resolved in favor of the Indians."  *Preston v. Heckler*, 734 F.2d 1359, 1369 (9th Cir. 1984); *accord Bryan v. Itasca Cnty., Minn.*, 426 U.S. 373, 392 (1976).

**{18}**    When construing ICWA we are also informed by the Bureau of Indian Affairs interpretive guidelines, which were published to assist state courts tasked with interpreting ICWA within the context of their own child welfare procedures.  *See* Guidelines for State Courts; Indian Child Custody Proceedings (ICWA Guidelines), 44 Fed. Reg. 67,584, 67,584 (Nov. 26, 1979) (noting that state courts have primary responsibility for interpreting ICWA and that Congress intended to give state courts flexibility); *see also In re Guardianship of Ashley Elizabeth R.*, 116 N.M. 416, 419, 863 P.2d 451, 454 (Ct. App. 1993) (noting that the guidelines are persuasive authority).  According to the ICWA Guidelines,

> Congress through [ICWA] has expressed its clear preference for keeping Indian children with their families . . . .  Proceedings in state courts involving the custody of Indian children shall follow strict procedures and meet stringent requirements to justify any result in an individual case contrary to these preferences.  . . .  [T]he Act shall be liberally construed in favor of a result that is consistent with these preferences.  *Any ambiguities* in any of such statutes, regulations, rules or guidelines *shall be resolved in favor of the result that is most consistent with these preferences*.

44 Fed. Reg. at 67,585 to -86 (emphasis added).

**{19}**    In short, when construing ICWA we must resolve all ambiguities liberally in favor of the Indian parent and the tribe in order to effectuate the purpose of the Act, which is to prevent the unnecessary removal of Indian children.

**C.  A Parent or Custodian's Consent to Temporary Custody Does Not Transform an Involuntary Proceeding into a Voluntary Proceeding to Which  § 1913 of ICWA Applies.**

**{20}**    Initially, we address the Court of Appeals' characterization of Mother's stipulation at the custody hearing as a "consent to a foster care placement" within the meaning of § 1913(a) of ICWA.  *See Marlene C.*, 2009-NMCA-058, ¶¶ 15-18. Section 1913 details the requirements for valid parental consent in situations where a "parent or Indian custodian

voluntarily consents to a foster care placement or to termination of parental rights." CYFD argues that this portion of the Court of Appeals opinion is inconsistent with the purpose of § 1913, which is to establish procedures for voluntary proceedings that are distinguishable from those used for involuntary proceedings. For the reasons that follow, we agree with CYFD and hold that § 1913 applies only to circumstances in which the parent or Indian custodian has initiated a voluntary proceeding.

**{21}** The characterization by the Court of Appeals that Mother's stipulation at the initial custody hearing was a voluntary consent within the meaning of § 1913(a) is problematic because, under § 1913(b), a parent can withdraw consent to a voluntary foster care placement at any time and regain custody of the child. The Court of Appeals' construction relies on the plain language of § 1913(a), which details the requirements for a valid parental consent in situations where "any parent or Indian custodian voluntarily consents to a foster care placement or to termination of parental rights." We decline to adopt the Court of Appeals' construction.

**{22}** By enacting § 1913, entitled "Parental rights; voluntary termination," we believe that Congress intended to establish a separate set of requirements for cases where a parent or Indian custodian voluntarily initiates a proceeding in order to relinquish parental or custodial rights to a child. Section 1913 does not contain the same procedural due process protections found in § 1912, such as notice to the parents and tribe, expert testimony, the appointment of counsel, and proof by clear and convincing evidence. Instead, § 1913 details the requirements for a valid consent to voluntary foster care placement or termination of parental rights, in Subsection (a), and provides mechanisms allowing a parent to have the child returned, even in some instances after a final decree of termination or adoption has been entered, in Subsections (b) through (d).

**{23}** Our conclusion that § 1913 applies only to voluntary proceedings initiated by the parent harmonizes two otherwise contradictory provisions within ICWA that define the term "foster care placement." Section 1903(1)(i) defines a foster care placement as "any action removing an Indian child from its parent or Indian custodian for temporary placement . . . where the parent . . . cannot have the child returned upon demand." Section 1913(b) provides that a parent "may withdraw consent to a foster care placement under State law at any time and, upon such withdrawal, the child shall be returned to the parent." We conclude that a foster care placement made in a voluntary proceeding is governed by § 1913 and is unaffected by § 1903(1)(i)'s definition, which applies only to involuntary proceedings. *See* § 1903 (providing that the definitions apply "except as may be specifically provided otherwise").

**{24}** Additional authority supports our conclusion that § 1913 applies only to voluntary proceedings. The ICWA Guidelines clearly distinguish § 1913, discussed under the heading "Voluntary Proceedings," from § 1912, discussed under "Involuntary Placements, Adoptions, or Terminations . . . of Parental Rights." *See* ICWA Guidelines, 44 Fed. Reg. at 67,592 to -93. Other jurisdictions have treated involuntary placements differently than

voluntary placements and have held that § 1913 applies only to voluntary proceedings initiated by the parent. *See, e.g.*, *Doe v. Mann*, 415 F.3d 1038, 1063 (9th Cir. 2005) (noting that "§ 1913 establishes parental rights in *voluntary* child custody proceedings involving Indian children"); *In re J.M.*, 218 P.3d 1213, 1217 (Mont. 2009) (holding that § 1913(a) "has no application to the involuntary termination proceedings initiated by the [state]"); *In re Adoption of K.L.R.F.*, 515 A.2d 33, 37 (Pa. Super. Ct. 1986) ("We construe § 1913(b) as applying to situations . . . wherein a *consensual* foster care placement was made in the first place and there is no inherent bar to a withdrawal of the consent."); *In re Welfare of MG*, 201 P.3d 354, 357 (Wash. Ct. App. 2009) ("Different requirements apply for the voluntary placement as opposed to involuntary removal of an Indian child. . . . [I]n a voluntary proceeding, if an Indian parent desires to withdraw his/her consent to placement, the child must be returned to his/her care."). Because § 1913 does not apply to involuntary proceedings like the one before us, we must look elsewhere for guidance.

**D. In a Contested Adjudication of Abuse or Neglect of an Indian Child, the Court Always Must Make the Factual Findings Required by § 1912(d) and (e) of ICWA at the Adjudicatory Hearing.**

*1. Overview of New Mexico Abuse and Neglect Proceedings*

**{25}** The primary issue before this Court is when, within the procedural framework established by New Mexico's Abuse and Neglect Act, the district court should address § 1912(d)'s "active efforts . . . to prevent the breakup of the Indian family" requirement and § 1912(e)'s "likely to result in serious . . . damage" requirement. To provide context for our discussion, we begin our analysis with a brief overview of the relevant stages of an abuse and neglect proceeding, including the ex parte custody stage, custody hearing, adjudicatory hearing, and dispositional hearing.

**{26}** CYFD initiates a proceeding by filing a petition alleging abuse or neglect with the district court. *See* § 32A-4-15; Rule 10-312 NMRA. To obtain immediate custody of the child, CYFD must also file a motion for an ex parte custody order, including an affidavit showing probable cause that custody is necessary and that the child has been abused or neglected. *See* § 32A-4-16(A)-(B); Rule 10-311(A) NMRA. If the district court finds probable cause, it may issue an order giving CYFD interim legal custody of the child until an initial custody hearing is held. *See* §§ 32A-4-16(A), -18(A). The rules of evidence do not apply to the issuance of an ex parte custody order. Section 32A-4-16(C); Rule 11-1101(D)(2) NMRA. At the inception of the abuse and neglect proceedings, the district court must appoint counsel for the parent and a guardian ad litem for the child. Section 32A-4-10(B)-(C).

**{27}** The district court must hold a custody hearing within ten days of the date the petition is filed "to determine if the child should remain in or be placed in [CYFD]'s custody pending adjudication." Section 32A-4-18(A). CYFD must give the parent "reasonable notice of the time and place of the custody hearing." Section 32A-4-18(B). The parent must be informed

of the allegations in the petition, potential consequences if those allegations are found true, and the rights to counsel and an adjudicatory hearing. Section 32A-4-10(G); Rule 10-314 NMRA. The rules of evidence do not apply at the custody hearing. Section 32A-4-18(H); Rule 11-1101(D)(2). If the court finds that there is probable cause to believe there has been abuse or neglect, the court determines custody of the child pending the adjudicatory hearing on the merits of the petition. *See* § 32A-4-18(A), (D).

**{28}** At the adjudicatory hearing the court determines whether the allegations in the petition are true. The adjudicatory hearing is an evidentiary hearing on the merits of the abuse or neglect case, complete with due process protections.

> [A]t a minimum, due process in neglect and abuse proceedings requires timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

*State ex rel. Children, Youth & Families Dep't v. Kathleen D.C.* (*In re Damion M.C.*), 2007-NMSC-018, ¶ 12, 141 N.M. 535, 157 P.3d 714 (internal quotation marks and citation omitted). The adjudicatory hearing must be "commenced within sixty days after the date of service" of the petition upon the respondent. Section 32A-4-19(A); *see also* Rule 10-343 NMRA (detailing triggering events for the sixty-day time limit). If the respondent denies the allegations in the petition,[1] the court must hear evidence on the petition and make findings on whether the child is abused, neglected, or both. Section 32A-4-20(G). Unlike the ex parte and custody hearing stages, the rules of evidence apply at the adjudicatory hearing. Rule 10-141 NMRA; *see also* Rule 11-1101(A), (D). The court must determine, in the absence of a valid admission, whether the child is abused or neglected "on the basis of clear and convincing evidence, competent, material and relevant in nature." Section 32A-4-20(H).

**{29}** If the court concludes on the basis of clear and convincing evidence that the child is abused or neglected, the next stage is the dispositional hearing, which can either be included within the adjudicatory hearing or conducted separately within thirty days after the adjudication of abuse or neglect. Sections 32A-4-20(H), -22(A). At disposition the court makes factual findings relevant to a custody determination, determines custody of the child, and establishes a treatment plan. Section 32A-4-22. The court must make multiple findings

---

[1]Pursuant to Rule 10-342(A) NMRA, "The respondent may make an admission by: (1) admitting sufficient facts to permit a finding that the allegations of the petition are true; or (2) declaring the respondent's intention not to contest the allegations in the petition."

regarding the interests of the child, the wishes of the child and parent, and the ability of the potential custodians. Section 32A-4-22(A). The rules of evidence do not apply at disposition; the court is instead allowed to consider "all relevant and material evidence helpful in determining the questions presented, including oral and written reports, . . . even though not competent had it been offered during the part of the hearings on adjudicatory issues." Section 32A-4-20(I); Rule 11-1101(D)(2).

*2. The § 1912(d) and (e) Findings in the Context of New Mexico's Procedural Framework*

**{30}** With New Mexico's procedural framework in mind, we consider which procedural stage is best suited for addressing the requirements of § 1912(d) and (e) of ICWA. *See R.A.C.P. v. State* (*In re Interest of D.S.P.*), 480 N.W.2d 234, 238 (Wis. 1992) (noting that state statutes should be read to harmonize with ICWA); *San Diego Cnty. Health & Human Servs. Agency v. Francisco Z.* (*In re Matthew Z.*), 95 Cal. Rptr. 2d 343, 349 (Cal. Ct. App. 2000) (explaining that the state proceeding best suited for addressing ICWA is the proceeding that requires findings that parallel the ICWA findings). CYFD's regular practice has been to address the findings required by § 1912(d) and (e) at the earliest possible procedural stage. Accordingly, CYFD asserts in this case that the district court, by issuing the ex parte custody order, made the "active efforts" finding required by § 1912(d) and that Mother's stipulation at the temporary custody hearing satisfied § 1912(e)'s "serious . . . damage" requirement. CYFD argues in the alternative that the dispositional hearing is the appropriate procedural stage for addressing the requirements of ICWA. Mother argues that the factual findings required by § 1912(d) and (e) must always be made at the adjudicatory hearing. We agree with Mother that § 1912(d) and (e) findings must be made at the adjudicatory hearing because the adjudicatory hearing is the procedural phase that affords the Indian parent and tribe the most procedural due process protection and best accommodates the requirements of § 1912.

**{31}** To construe ICWA within the procedural framework of New Mexico's Abuse and Neglect Act, we begin with a textual analysis to determine whether the plain meaning of the relevant ICWA provisions addresses the question at hand. The plain language of § 1912(d) and (e) specifies what is required to be shown: (1) that "active efforts have been made" and (2) that "the continued custody of the child . . . is likely to result in serious emotional or physical damage." But the text gives only a vague indication of *when* the findings must be made: prior to a "foster care placement," which ICWA defines as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home . . . where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." § 1903(1)(i). This language does not unambiguously indicate which procedural phase within a foster care placement proceeding is the proper time for the § 1912(d) and (e) findings to be made. Accordingly, we resort to the policy and purpose of ICWA and our tools of statutory construction as we attempt to effectuate Congress's intent.

*3. New Mexico's Ex Parte and Custody Hearing Stages Are Unsatisfactory Procedural Stages for Addressing the Requirements of § 1912(d) and (e) of ICWA.*

**{32}** New Mexico's ex parte and custody hearing stages are ill-suited for making the § 1912(d) and (e) findings because they are emergency proceedings that do not provide sufficient due process protections. New Mexico's ex parte and custody hearing stages are expedited emergency proceedings that enable the State to remove a child and take temporary custody in order to ensure the child's safety until a full hearing on the merits is held. *See Yount v. Millington*, 117 N.M. 95, 101, 869 P.2d 283, 289 (Ct. App. 1993) ("[W]hen a child's safety is threatened, that is a sufficient basis to justify postponing the parent's hearing until after the child has been taken into protective custody."). Congress has expressly recognized a state's power to implement emergency removal and placement actions for Indian children in § 1922 of ICWA which states, in pertinent part:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child.

**{33}** Although § 1922 expressly refers only to Indian children who are residents of or domiciled on the reservation, we conclude that CYFD must necessarily have the power to take emergency custody of any Indian child who is physically located off the reservation. ICWA gives an Indian tribe exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe." § 1911(a). But when an emergency arises with respect to a child who is physically located off a reservation, the time-sensitive nature of the emergency may require CYFD to take immediate action to remove the child from harm's way without first establishing whether the child is subject to exclusive tribal jurisdiction. *See* ICWA Guidelines, 44 Fed. Reg. at 67,589 to -90. Once the child is safe, § 1922 requires CYFD to "expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate." Section 1922 thus allows CYFD to secure the child first and ask questions about the child's residence and domicile later in order to ensure the child's safety.

**{34}** The ICWA guidelines, the statute's legislative history, and the decisions of other jurisdictions support our conclusion. Other states have recognized their ability to perform an emergency removal of an Indian child without first adhering to the requirements of § 1912. *See San Bernardino Cnty. Dep't of Children's Servs. v. Jeannie V.* (*In re S.B.*), 30 Cal. Rptr. 3d 726, 735-36 (Cal. Ct. App. 2005) (explaining that § 1922 should be read to apply to Indian children who are not residents of or domiciled on a reservation); *State ex rel. Juvenile Dep't of Multnomah Cnty. v. Charles* (*In re Jade Charles*), 688 P.2d 1354, 1358 n.2

12

(Or. Ct. App. 1984) (explaining that "it is implicit that 'emergency removal' authority extends to non-reservation Indian children"). ICWA's legislative history explains that § 1922 was intended to "permit, under applicable state law, the emergency removal of an Indian child from his parent or Indian custodian or emergency placement of such child in order to prevent imminent physical harm to the child notwithstanding the provisions of [ICWA]." H.R. Rep. No. 95-1386, at 25 (1978). The ICWA Guidelines confirm that although "emergency action must be taken without the careful advance deliberation normally required," the "court shall be required to comply with the requirements of [ICWA] and reach a decision within 90 days unless there are 'extraordinary circumstances' that make additional delay unavoidable." 44 Fed. Reg. at 67,590. We conclude that New Mexico's ex parte and custody hearings are emergency proceedings under § 1922 to which the requirements of § 1912 do not apply.

**{35}** Additionally, the ex parte and custody hearing stages are unsatisfactory settings in which to make the § 1912(d) and (e) findings because the timing of those stages does not fit within the notice timeline provided by § 1912 and because they require a lesser standard of proof than that required by ICWA. Under ICWA, a "foster care placement or termination of parental rights proceeding" cannot be held "until at least ten days after receipt of notice by the parent or Indian custodian and the tribe," and the parent, Indian custodian, or tribe is entitled to "up to twenty additional days to prepare for such proceeding." § 1912(a). In contrast, New Mexico's ex parte stage allows CYFD to obtain a court order for immediate removal of a child without any notice to the parent or tribe. *See* § 32A-4-16. CYFD must provide the parent with "reasonable notice" of the custody hearing, but the hearing must be held within ten days of the date the petition is filed. Section 32A-4-18(A)-(B). Section 32A-4-18's ten-day time frame does not allow notice to reach the tribe and parent at least ten days and up to thirty days before the custody hearing as required by § 1912(a). The ten-day period does not allow the parent to consult fully with counsel and prepare a complete defense on the merits of serious legal and factual issues. And it does not allow CYFD to adequately prepare to present the expert witness testimony required by § 1912(e). At the ex parte and custody hearing stages, a denial of parental custody under New Mexico law requires only a showing of probable cause indicating abuse or neglect, *see* §§ 32A-4-16(A), -18(C), while § 1912(e) of ICWA expressly requires clear and convincing evidence that "serious emotional or physical damage to the child" is likely. These divergent timelines and standards of proof distinguish the ex parte and custody hearing stages from the adjudication stage, which comports with the requirements of § 1912.

*4. The Adjudicatory Hearing Is the Best Procedural Stage in Which to Make the § 1912(d) and (e) Findings.*

**{36}** New Mexico's adjudicatory hearing incorporates procedural due process protections and a stringent standard of proof that parallel those required by ICWA. The adjudicatory hearing must be held within sixty days after the date the petition is served on the parent. Section 32A-4-19(A). This time frame comports with ICWA's requirement that the parent and tribe receive notice at least ten days and up to thirty days before the commencement of

13

a foster care placement proceeding. *See* § 1912(a). The timing of the adjudicatory hearing allows for the notice required by § 1912(a) while meeting the ICWA requirement that CYFD "expeditiously" initiate a foster care placement proceeding following an emergency removal or placement proceeding. *See* § 1922. If a parent denies allegations of abuse or neglect at the adjudicatory hearing, the court must hear all evidence bearing on the issue. Section 32A-4-20(G). Because the adjudicatory hearing is an evidentiary hearing, it is a practical time to satisfy the ICWA requirement that CYFD present the "testimony of qualified expert witnesses." *See* § 1912(e). At a contested adjudication, the State is required to prove abuse or neglect by "clear and convincing evidence, competent, material and relevant in nature." Section 32A-4-20(H). Consistently, § 1912(e) of ICWA requires a showing by "clear and convincing evidence . . . that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." The similarities between New Mexico's requirements for an adjudicatory hearing and the ICWA requirements for the involuntary placement of an Indian child in foster care make the adjudicatory hearing the best procedural phase for the court to make the findings required by § 1912(d) and (e).

**{37}** More importantly, requiring courts to make the factual findings prescribed by § 1912(d) and (e) at the adjudicatory hearing furthers the purposes and policies behind ICWA because both the parent and the tribe are able to participate meaningfully in the process. Parents have a fundamental liberty interest in the care and custody of their children; due process of law is required before parents can be deprived of that right. *See Kathleen D.C.*, 2007-NMSC-018, ¶ 12. ICWA also protects the interests of both the Indian child and the tribe by preventing the unwarranted removal of Indian children from their unique culture and heritage. *See* § 1901(3)-(5). Because we must construe ICWA by resolving all ambiguities liberally in favor of the Indian parent and tribe, we conclude that the findings required by § 1912(d) and (e) always must be made at the adjudicatory hearing, which incorporates due process protections.

*5. New Mexico's Dispositional Hearing Does Not Comport with ICWA's § 1912(d) and (e) Requirements.*

**{38}** Compared with the adjudicatory hearing, the dispositional hearing stage is less compatible with the requirements of § 1912(d) and (e). The dispositional stage occurs later in the process, after the court has already ruled on the allegations of abuse and neglect. Sections 32A-4-20(H), -22(A). CYFD asserts that the § 1912 findings do not factor into whether a child is abused or neglected but are instead "more a dispositional type of issue." We disagree. The § 1912(e) finding is closely analogous to a finding of abuse under New Mexico law. *Compare* § 1912(e) (requiring "a determination . . . that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child"), *with* § 32A-4-2(B)(1) (defining an abused child as any child "who has suffered or who is at risk of suffering serious harm because of the action or inaction of the child's parent, guardian or custodian"). It makes little sense for the court to

address the merits of an abuse allegation at the adjudicatory hearing and then later make the similar § 1912(e) finding at disposition.

**{39}** The parties before us agree that the dispositional stage does not provide the parent with due process protections afforded the parent at adjudication. The rules of evidence do not apply at disposition; in fact, the court can receive and rely upon information that would not have been considered competent evidence had it been offered at the adjudicatory hearing. *See* § 32A-4-20(I); Rule 11-1101(D)(2). The Abuse and Neglect Act does not specify the standard of proof that applies at disposition. These non-evidentiary procedures are inconsistent with ICWA's requirements of "clear and convincing evidence" and "testimony of qualified expert witnesses." § 1912(e). They are likewise inconsistent with a parent's right to contest that "active efforts have been made . . . to prevent the breakup of the Indian family." *See* § 1912(d). We conclude that the dispositional hearing is an unsatisfactory stage at which to address the requirements of § 1912(d) and (e) of ICWA.

*6. A Parent Can Admit to the Factual Findings Required by § 1912(d) and (e) Only If the Court Adheres to Procedural Safeguards Protecting the Rights and Interests of the Parent, Child, and Tribe.*

**{40}** Parental stipulations to temporary CYFD custody pending adjudication are not unusual in abuse and neglect proceedings. Our holding does not preclude stipulations to temporary custody pending adjudication, so long as the court ensures that the parent knowingly enters into the stipulation. Although we differ from the view expressed in the Court of Appeals opinion that § 1913(a) controls voluntary stipulations made in involuntary proceedings, we agree that § 1913(a) provides helpful guidance on what should be required for a valid parental stipulation in involuntary proceedings. *See Marlene C.*, 2009-NMCA-058, ¶ 15. Under § 1913(a), a parent's consent is valid only if the court ensures "that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian." It is reasonable that the same underlying principle should govern valid parental consent to temporary custody pending adjudication: A parent must understand what the consent really means.

**{41}** At the custody hearing in this case, Mother's newly appointed counsel explained to her that Child was temporarily going to be in State custody, and the judge explained that there would be a later hearing called an adjudication to determine whether Child would remain with the State for a longer period of time. Mother does not contest that she intended to stipulate to temporary custody pending adjudication. But nothing in the record indicates that Mother understood her stipulation to temporary custody to amount to a permanent waiver of the substantive rights afforded by § 1912(d) and (e). The stipulation order entered at the custody hearing did not purport to waive any of Mother's statutory rights under ICWA.

**{42}** Admission to the factual findings required by § 1912 invokes more stringent procedural safeguards than a parental stipulation to temporary custody. Unlike the custody

15

hearing, which is a preliminary emergency proceeding, the adjudicatory hearing addresses the ultimate merits of the case, and a parent's admission to allegations of either abuse or neglect or to the factual findings required by § 1912(d) and (e) has much more serious consequences than a stipulation to temporary custody. The result of a stipulation to abuse or neglect may well be a permanent severance of the relationship between the parent and child. Accordingly, the court must adhere to stricter procedural safeguards at adjudication to ensure that parents do not casually surrender either their fundamental liberty interest in the care and custody of their children or the substantive rights protected by ICWA. *See Kathleen D.C.*, 2007-NMSC-018, ¶ 12 (providing that the "interest of parents in the care, custody, and control of their children is a fundamental liberty interest" (internal quotation marks and citation omitted)); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36 (1989) (discussing the "important substantive requirement[s]" that ICWA imposes on state courts).

**{43}** Congress enacted ICWA to protect the rights and interests of the parent, the tribe, and the child. *See Miss. Band of Choctaw Indians*, 490 U.S. at 32, 34, 52-53 (holding that a parent cannot defeat ICWA's provision of exclusive tribal jurisdiction over an Indian child domiciled on the reservation by simply giving birth off the reservation and placing the child for adoption). Congress intended ICWA to "protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society." *Id.* at 37 (internal quotation marks and citation omitted). When enacting ICWA, Congress knew that removing Indian children from their family and tribe could negatively impact the tribe's "long-term . . . survival and [have] damaging social and psychological impact[s] on many individual Indian children." *Id.* at 50 (internal quotation marks and citation omitted). ICWA therefore protects a child's interest in retaining "his or her tribal and cultural heritage." *Id.* at 50 n.24 (internal quotation marks and citation omitted). And ICWA furthers tribal sovereignty by ensuring that tribes are able to raise their children with their own cultural and societal values. *Id.* at 34.

**{44}** The tribe's interest in its children is one more reason that the requirements of § 1912 cannot be taken lightly or addressed in a cursory manner. ICWA is replete with provisions designed to protect the tribe's interest in child custody proceedings affecting the tribe's children, including § 1911(a) (providing exclusive tribal jurisdiction over reservation domiciliaries), § 1911(b) (providing presumptive tribal jurisdiction over non-domiciliaries), § 1911(c) (giving tribes the right to intervene in state court proceedings), § 1912(a) (providing for the tribe's right to notice of involuntary state court proceedings), § 1914 (providing for the tribe's right to petition for invalidation of state court actions), § 1915(c) (allowing tribes to reorder the placement priorities applicable to state court actions), § 1915(e) (giving the tribe the right to obtain placement records), and § 1919 (giving tribes the authority to enter agreements with states). ICWA protects the tribe's interest primarily through its jurisdictional provisions and child placement preferences. *See* §§ 1911 (establishing ICWA's jurisdictional scheme), 1915 (establishing placement preferences for Indian children); *see also Miss. Band of Choctaw Indians*, 490 U.S. at 36 (explaining that ICWA's jurisdictional provisions are "the heart" of ICWA and that § 1915, establishing

16

placement preferences for Indian children, is the most important substantive requirement that ICWA imposes on state courts).

**{45}** While an abuse and neglect proceeding is designed to protect the best interests of the child and the rights of the parents, ICWA goes further by protecting the unique relationship between a tribe and its children. That relationship is not to be severed casually or without good cause. If a parent wishes to admit to the factual findings required by ICWA without a full adjudicatory hearing, we must require procedural safeguards that meet the standards New Mexico law requires for admissions in ordinary abuse and neglect proceedings. The New Mexico Children's Court Rules provide that a parent can admit to abuse or neglect, by "admitting sufficient facts to permit a finding that the allegations of the petition are true," Rule 10-342(A) NMRA, and give details of the procedural safeguards required for an admission to be valid, Rule 10-342(C)-(D). We hold that similar procedural requirements apply when a parent admits to the factual findings prescribed under § 1912(d) and (e). Before the court accepts a parent's admission to the § 1912(d) and (e) findings, the court must make "such inquiry as shall satisfy the court that there is a factual basis for the admission." Rule 10-342(D). CYFD must be prepared to offer evidence to satisfy the court that such a basis exists. *Cf. State ex rel. Children, Youth & Families Dep't v. Stella P.*, 1999-NMCA-100, ¶ 35, 127 N.M. 699, 986 P.2d 495 (explaining that to meet CYFD's burden of proof in a termination of parental rights proceeding, CYFD must present "sufficient testimony to allow the court to make the required statutory findings").

**{46}** Additionally, before accepting an admission, the court must ensure that the admission is voluntary and that the parent understands (1) the allegations of the petition, (2) the possible dispositions should the allegations of the petition be found true, (3) the right to deny the allegations and have a full adjudicatory hearing, and (4) that the admission waives the parent's right to contest the § 1912(d) and (e) findings in a full adjudicatory hearing. *See* Rule 10-342(C). In this case, Mother's stipulation to temporary custody pending adjudication did not meet the requirements for a valid evidentiary admission to the factual findings required by § 1912(d) and (e).

**E. The Proper Remedy in This Case is Reversal of the Adjudication of Neglect and Remand for Further Proceedings.**

**{47}** CYFD asks this Court to reverse the Court of Appeals' decision and, if ICWA requirements were not satisfied in this case, to remand this case to the district court to hold an additional hearing regarding the ICWA requirements. Mother argues that the adjudication of neglect must be reversed based on insufficiency of the evidence. While we agree with Mother that the adjudication of neglect must be reversed because the findings required by § 1912(d) and (e) of ICWA were not made at the adjudicatory hearing on abuse and neglect, we conclude that remanding to the district court for further proceedings is appropriate in this case.

17

**{48}** Ordinarily, appellate reversal on substantive grounds of an adjudication of abuse or neglect results in the dismissal of the petition and a remand to the district court, which "retains jurisdiction to determine whether the parent prevailing on appeal should regain custody of the child." *Benjamin O.*, 2007-NMCA-070, ¶ 35. If CYFD does not believe that reunification is in the best interests of the child, "it can bring new or current allegations of abuse, neglect, or abandonment to the district court's attention," *id.* ¶ 39, and argue that such "allegations of abuse or neglect are sufficient to establish abuse or neglect by clear and convincing evidence," *id.* ¶ 40.

**{49}** In this case, we are deciding issues of first impression regarding proper implementation of the ICWA requirements in New Mexico courts. CYFD asserts that it has made a good faith effort to comply with the letter and spirit of ICWA by addressing § 1912(d) and (e) at the earliest possible procedural stage. We recognize that if we were to order dismissal of the abuse and neglect petition for lack of proof on the ICWA requirements, CYFD would be precluded from bringing the same potentially meritorious allegations in a new petition but instead would have to decide whether it had grounds to supplement the original petition or file a new petition with different allegations of abuse or neglect. We conclude that requiring CYFD to begin the process anew in this case by bringing new allegations of abuse or neglect neither promotes judicial economy nor protects Child's best interests. Accordingly, we remand this case to the district court for a new adjudicatory hearing so that CYFD can present any evidence, including qualified expert testimony, that bears on the findings required by § 1912(d) and (e).

## III. CONCLUSION

**{50}** In child abuse and neglect proceedings to which ICWA applies, the findings required by § 1912(d) and (e) always must be addressed at the adjudicatory hearing. They were not in this case. Accordingly, we reverse the adjudication of neglect and remand this case to the district court for a new adjudicatory hearing that satisfies the requirements of § 1912(d) and (e) of ICWA.

**{51}  IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR**:

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *Children, Youth & Families Dep't v. Marlene C. (In re Esther V.*),
Docket No. 31,738**

| | |
|---|---|
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| CD-CR | Children's Court |
| CD-CT | Children's Court Rules |
| CD-CS | Custody |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| | |
| **IL** | **INDIAN LAW** |
| IL-IW | Indian Child Welfare Act |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |