1999-NMCA-100

986 P.2d 495

**STATE of New Mexico ex rel. CHILDREN, YOUTH AND FAMILIES DEP'T, In re Diamond–Jerome P. and Tamara Naomi P., Petitioner–Appellee,**

v.

**STELLA P., A.K.A. Theresa P., Respondent–Appellant.**

**No. 19,228.**

Court of Appeals of New Mexico.

June 22, 1999.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, New Mexico Children, Youth and Families Dep't, Santa Fe, for Appellee.

Jane Bloom Yohalem, Santa Fe, for Appellant.

John B. Garrity, Albuquerque, Guardian ad Litem for Appellant.

Rosa Sanchez Armijo, Los Lunas, Guardian ad Litem for the Children.

## OPINION

ARMIJO, J.

{1} This appeal presents an opportunity to examine the respective roles and obligations of the children's court and a parent's attorney and guardian ad litem (GAL) where a mentally ill parent purportedly waives her right to contest termination of her parental rights.

{2} Stella P., who is also known as Theresa P. (Mother), appeals the judgment of the children's court terminating her parental rights to two children. On appeal, she claims the children's court committed fundamental error by failing to protect her right to contest the proceeding. We determine that

the children's court erred in not ascertaining whether Mother voluntarily, knowingly, and intelligently waived her right to contest the proposed termination. We further determine that the Children, Youth, and Families Department's (CYFD) use of a proffer of evidence in this case was an improper means of meeting its burden of establishing grounds for termination by clear and convincing proof. Accordingly, we reverse the judgment of the children's court and remand for a new trial.

*FACTUAL BACKGROUND*

{3} Mother is mentally ill. Her history of mental illness includes schizo-affective disorder, borderline-personality disorder, delusional disorder, and paranoid-personality disorder. Citing this history of mental illness and alleging Mother's inability to care for her children, CYFD filed its motion for termination of parental rights (TPR) on December 31, 1996. The motion sought to terminate Mother's rights in regard to Diamond–Jerome, then age two, and Tamara, then age one. The children's court previously adjudicated each child as neglected: Diamond–Jerome in 1994 and Tamara in 1995. Mother's mental illness formed the basis for the prior adjudications.

{4} In August 1997, her attorney requested that the children's court appoint a GAL for Mother "in order to address the issue of her best interests herein." As grounds for this request, the attorney expressed his doubts about Mother's ability to participate competently in the termination proceeding because her condition seemed to him to have deteriorated. On August 25, 1997, approximately one month before the trial, the children's court entered a stipulated order appointing a GAL for Mother. In its order the court stated: "John Garrity, Esq.[,] be and hereby is, appointed as Guardian ad Litem for the respondent [Mother], during the course of the litigation in this case." The order did not further define the GAL's role.

{5} The children's court convened the termination hearing on October 31, 1997. Mother did not attend the trial because it was Halloween and she felt ill and afraid, nonetheless, the trial proceeded.

{6} CYFD put forth no direct evidence in support of terminating Mother's parental rights. Instead, noting her understanding that Mother "would not be able to make it today," counsel for CYFD made only a brief proffer of evidence indicating what she contended the evidence would have shown. This proffer related to (1) the past adjudication of the children as neglected children, (2) CYFD's efforts to assist Mother, and (3) the futility of further efforts to assist Mother in remedying the underlying causes of the neglect within the foreseeable future. The children's GAL then advised the court that, in her opinion, the best interests of the children would be served by terminating Mother's parental rights and freeing the two children for adoption by their maternal grandmother. None of the parties presented any evidence or testimony.

{7} In response to CYFD's proffer, Mother's attorney conceded that CYFD would have proved its case if the matter went to trial:

> And I am satisfied that the proffer offered by the Department to the Court today would have been evidence that was clear and convincing to the Court.... [A]s a response to the proffer, I would only request that full attention be given to the possibilities of my client continuing to maintain contact with her children.

Regarding Mother's absence, he provided no explanation. His only comment was:

> I think my client has wanted to appear and has not wanted to appear at the same time for most of the time ... leading up to this trial date has been going on.... I think it's very difficult for her, your honor, even physically to get out of her apartment, to make herself do that.

Her attorney further noted his several telephone conversations with Mother, the most recent as early as the morning of trial, and his belief that "she understands what is going on today." Regarding Mother's intent toward her children, her attorney said only: "[Mother] loves these children. I think her main concern is being able to maintain contact with them."

{8} Mother's GAL spoke briefly to the court. Noting that he saw his role as "to assist in any way possible," Mother's GAL stated: "Your honor, I concur with the remarks of [Mother's attorney] wholeheartedly.... [A]nd I just concur with really everything that's been said already to the Court." He further stated his belief that during his meeting with Mother one week before trial, "she was oriented to time and place reality." Finally, he noted her "definite understanding of the legal process which is involved with the removal of her children."

{9} Notably, no evidence was presented by Mother's attorney or GAL explaining why Mother was not present at the TPR hearing, nor did Mother's attorney or GAL make known to the children's court Mother's continued opposition to the termination of her parental rights. The court did not inquire into these matters. Nonetheless, upon the tendered proffer and its presumption that Mother had waived her right to contest the proceeding, the children's court terminated Mother's parental rights.

{10} After the court entered its judgment on January 5, 1998, Mother contacted her attorney and GAL and informed them that she had been ill on the day of the trial, that she had been afraid to leave her house on Halloween, and that she did not want to give up her rights to her children. This appeal followed.

*THE DOCTRINE OF FUNDAMENTAL ERROR*

{11} Before addressing the substance of Mother's appeal, we must consider whether this Court has jurisdiction over the matter. Mother did not preserve at trial the issues now appealed. She did not ask the children's court to reconsider the judgment, nor did she ask for a new trial. Nonetheless, she argues on appeal that the children's court committed fundamental error because the termination was impermissibly based upon Mother's absence and the ambiguities of her representatives' statements. *See* Rule 12–216(B)(2) NMRA 1999.

{12} The error claimed in this case inarguably relates to Mother's fundamental right to mount a defense to the proposed termination of her parental rights. *See State*

*v. Bencomo*, 109 N.M. 724, 725, 790 P.2d 521, 522 (Ct.App.1990) (noting that the validity of a party's choice to plead "no contest" goes to "the 'foundation of the case'") (quoting *State v. Lucero*, 70 N.M. 268, 272, 372 P.2d 837, 840 (1962)). The record before us supports a significant doubt as to whether Mother intended to waive her right to contest the proposed termination or was capable of assisting and advising her attorney concerning her position or wishes in regard to the proposed termination. *See id.* (noting "high probability that defendant would have withdrawn his plea" if given the chance). Therefore, on the facts presented, we determine that the doctrine of fundamental error applies.

*STANDARD OF REVIEW*

{13} In this appeal, we are asked to determine whether Mother validly waived her right to appear at trial and to contest the proposed termination. We review such constitutional questions *de novo*. *See In re Ruth Anne E.*, 1999–NMCA–035, ¶17, 126 N.M. 670, 974 P.2d 164. Moreover, we apply a strong presumption against waiver of any constitutional right and will weigh doubts on this point in Mother's favor. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Smith v. Maldonado*, 103 N.M. 570, 573, 711 P.2d 15, 18 (1985); *see also State v. Arellano*, 1998–NMSC–026, ¶49, 125 N.M. 709, 965 P.2d 293 (McKinnon, J., dissenting).

*DUE PROCESS*

{14} The Children's Code and its procedural rules apply to TPR proceedings. *See* Rule 10–101(A)(1)(c) NMRA 1999 (including by 1997 amendment TPR proceedings within scope of procedural rules). *But see In re T.C.*, 118 N.M. 352, 354, 881 P.2d 712, 714 (Ct.App.1994) (interpreting preamendment version of Children's Code procedural rules and concluding that rules of civil procedure applied to TPR trials). Moreover, Mother's right to her legal relationship with her children is fundamental. *See In re Termination of Parental Rights of Reuben & Elizabeth O.*, 104 N.M. 644, 650, 725 P.2d 844, 850 (Ct.App.1986). Therefore, proceed-

ings affecting this relationship must also protect her right to due process. *See State ex rel. Children, Youth & Families Dep't v. Joe R.* 1997–NMSC–038, ¶ 29, 123 N.M. 711, 945 P.2d 76; *see also Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.").

{15} As this Court has recently reiterated, "procedural due process is a flexible right and the amount of process due depends on the particular circumstances of each case." *In re Ruth Anne E.,* 1999–NMCA–035, ¶ 17, 126 N.M. 670, 974 P.2d 164; *see also In re Valdez,* 88 N.M. 338, 341, 540 P.2d 818, 821 (1975). We consider three factors in determining what process is due: (1) Mother's interest in the TPR trial; (2) the risk that Mother was " 'erroneous[ly] depriv[ed]' of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards' "; and (3) the state's interest in the TPR trial. *In re Ruth Anne E.,* 1999–NMCA–035, ¶ 21, 126 N.M. 670, 974 P.2d 164 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). We now apply these factors to the facts before us.

{16} As nothing less than her constitutionally protected relationship with her children was at stake, Mother had a clear and significant interest in the TPR trial. *See In re Termination of Parental Rights of Reuben & Elizabeth O.,* 104 N.M. at 650, 725 P.2d at 850. Similarly, the state had a significant interest in the proceeding as it sought to safeguard the welfare of two young children. *See Ridenour v. Ridenour,* 120 N.M. 352, 355, 901 P.2d 770, 773 (Ct.App.1995). Our inquiry, therefore, focuses on the second factor, that is, whether the procedures employed below placed Mother at risk of erroneous deprivation of her interest in the trial " 'and the probable value, if any, of additional or substitute procedural safeguards.' " *In re Ruth Anne E.,* 1999–NMCA–035, ¶ 21, 126 N.M. 670, 974 P.2d 164 (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. 893).

## WAS MOTHER'S RIGHT TO DEFEND HER FUNDAMENTAL INTERESTS PROTECTED BY ADEQUATE PROCEDURAL SAFEGUARDS?

{17} Notably, no inquiry was made or explanation provided as to the present mental condition of Mother and whether Mother contested the proposed termination of her parental rights. Although this Court has recently determined that due process protections do not vest a parent with an absolute right to be present at his or her TPR trial, *see In re Ruth Anne E.,* 1999–NMCA–035, ¶ 17, 126 N.M. 670, 974 P.2d 164, the right to participate meaningfully in the proceeding is separate and distinct from the right to defend against the proposed termination. We note that in the instant case, it is Mother's right to defend that is clearly implicated.

{18} While both her attorney and GAL noted Mother's apparent understanding of the TPR proceeding, neither represented that it was her intent to forego her right to contest the trial. On the contrary, her attorney made clear that Mother "loves these children" and has a strong desire "to maintain contact with them." Viewing her representatives' statements against the backdrop of this case's record, it is far from certain that Mother intended to waive her right to defend against the proposed termination. For example, the record contains Mother's answer challenging the TPR motion as well as evidence regarding her desire to be a parent and refusing to consent to the children's adoption.

{19} Despite the lack of certainty regarding Mother's intent, no protective procedures were employed at trial to safeguard her right to defend herself. Her representatives failed to explain her absence or to state that Mother had any intent to waive her right to defend. Without any inquiry into whether it was proper to infer from her absence that Mother voluntarily and unequivocally intended to waive her right to contest the proceeding, we conclude that Mother faced an unacceptably high risk of erroneous deprivation of her fundamental rights.

{20} Mother's appellate counsel argues that the children's court violated Rule 10–307 NMRA 1999, by failing to adequately inquire into Mother's physical absence from the court. The physical presence of a parent is not mandatory at a TPR proceeding, especially where the parent is represented by a GAL; nevertheless, the better procedure is for the record to indicate the basis for the parent's absence. *Compare* NMSA 1978, § 45–5–303(F) (1989) (requiring physical presence of incapacitated person at hearing for appointment of guardian).

{21} Minimum consideration of due process requires the children's court to inquire explicitly and on the record as to whether Mother validly intended to waive her right to contest the termination. *See In re A.B.*, 151 Wis.2d 312, 444 N.W.2d 415, 418 (Ct.App. 1989) ("Given the consequences and finality of an order terminating parental rights, a trial court's inquiry into the various factors that comprise the mosaic of voluntariness must be searching and penetrating." (citation omitted)); *cf. In re Termination of Parental Rights of Ronald A.*, 110 N.M. 454, 456, 797 P.2d 243, 245 (1990) ("[I]n the last analysis it is the trial court that is responsible to afford due process to ... litigants."). To infer waiver without such inquiry ignores the fundamental interests involved. It is apparent on the record before us that no such inquiry was made nor adequate explanation provided. We emphasize the inadequacy of the record in this regard given that Mother's absence appears to have provided a substantial basis for the termination of her parental rights; indeed, even CYFD concedes in its answer brief to this Court that the reasons for Mother's absence "can not [sic] be ascertained from this record."

{22} Nonetheless, CYFD argues against imposing upon the children's court any additional procedural steps prior to the termination of a parent's legal rights to his or her children. It asserts that it is impractical to expect the children's court to inquire explicitly and on the record as to whether a parent voluntarily, knowingly, and intelligently waived his or her right to contest a TPR proceeding. CYFD further suggests that a parent could hold a termination proceeding indefinitely in limbo by failing to appear for trial. Instead, it urges this Court to apply the civil default rule to the TPR context. *See* Rule 1–055 NMRA 1999. We reject CYFD's argument, however, as it confuses the right of a litigant to appear or participate by other means with the right of a litigant to defend against the proposed termination.

{23} Through her attorney, Mother filed a written response to the termination motion, contesting the proposed action. She was further represented at trial by an attorney and GAL. Mother's absence from the courtroom, presumably because of her mental state, does not constitute a default of her right to contest the termination; nor does it equate to a consent to the proposed termination. The sanction of default is a drastic one and is not appropriate to the facts of this case. *Cf. In re Adoption of J.J.B.*, 119 N.M. 638, 648, 894 P.2d 994, 1004 (1995) ("While proceedings that involve the termination of parental rights are not criminal in nature, they certainly demand a greater degree of factual certainty than ordinary civil proceedings.").

{24} Furthermore, requiring the children's court to ascertain whether a purported decision not to contest termination of parental rights is voluntarily, intelligently, and knowingly made does not present the procedurally unworkable knot CYFD suggests. Indeed, the procedural rules pertaining to the Children's Code already provide, in instances where a parent chooses not to contest the allegations contained in an abuse or neglect petition, that the court must directly inquire as to whether the parent's choice was voluntarily, intelligently, and knowingly made. *See* Rule 10–307(C) NMRA 1999; *In re Termination of Parental Rights of Lilli L.*, 121 N.M. 376, 379–81, 911 P.2d 884, 887–89 (Ct.App.1995) (discussing effect of failure to make Rule 10–307 inquiry on record); *cf.* Rule 5–303(E)–(F) NMRA 1999 (imposing upon district courts an analogous duty of inquiring into the validity of a criminal defendant's guilty plea); *Santosky*, 455 U.S. at 762, 102 S.Ct. 1388 (noting that TPR proceeding "bears many of the indicia of a criminal trial").

{25} Moreover, we note that in the context of a parent's voluntary relinquishment of parental rights, the children's court is required (1) to advise the parent of the legal consequences of such relinquishment, (2) to ascertain whether the parent understands these consequences, and (3) to determine that the parent's decision is voluntary and unequivocal. *See* NMSA 1978, § 32A–5–21(A)(5),(6) (1993).

{26} While imposition of these rules has added prerequisite procedural steps to state actions seeking to deprive an individual of a fundamental liberty interest, their past operation has not undermined judicial efficiency. There is no reason to suspect imposition of an analogous rule in this context will unduly hinder proceedings to terminate parental rights. Nor ought a parent's mental illness render implementation of such a rule impracticable. Where, as in this case, a mentally ill parent's interests are protected in such a hearing by a GAL, the inquiries can be directed to the GAL, provided it is established that the parent is unable to render such decisions due to the extent and effects of his or her mental illness.

{27} Finally, imposition of protective procedural steps upon the children's court is consistent with the fundamental nature of the rights involved in a TPR proceeding. In this regard, we emphasize that waiver of fundamental rights will not be presumed. *See Johnson*, 304 U.S. at 464, 58 S.Ct. 1019; *Maldonado*, 103 N.M. at 573, 711 P.2d at 18. *But cf.* NMSA 1978, § 32A–4–28(B)(3) (1997) (providing for presumption of parent's abandonment of parental rights); *In re Adoption of J.J.B.,* 119 N.M. at 647–50, 894 P.2d at 1003–06 (discussing constitutional constraints upon this presumption). Accordingly, application of the civil default judgment rules under the circumstances of this case would allow a children's court judge to unconstitutionally infer waiver without a clear determination that a party actually waived his or her fundamental rights.

{28} *In re Esperanza M.,* 1998–NMCA–039, ¶ 40, 124 N.M. 735, 955 P.2d 204, we explained the role of a GAL representing a child in a TPR proceeding. We now briefly note the roles of an attorney and a GAL representing a mentally ill parent in a TPR proceeding. Rule 16–114 NMRA 1999 provides, in pertinent part:

A. **Client-lawyer relationship.** When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

B. **Protective action.** A lawyer may seek the appointment of a guardian or conservator or take other protective action with respect to a client, only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.

An attorney has a duty to zealously advocate his client's expressed or implied wishes. *See* Rule 16–103 cmt. NMRA 1999 (noting a lawyer should act "with zeal in advocacy upon the client's behalf").

{29} Mother's GAL is "not a mere figurehead, but is required to take all steps reasonably necessary to protect and promote the interests of his ward in litigation." *In re Mitchell,* 914 S.W.2d 844, 851 (Mo.Ct.App. 1996) (internal quotation marks omitted); *see Bonds v. Joplin's Heirs,* 64 N.M. 342, 345, 328 P.2d 597, 599 (1958) ("[A]ppointment as guardian ad litem of a minor is a position of the highest trust and no attorney should ever blindly enter an appearance as guardian ad litem and allow a matter to proceed without a full and complete investigation into the facts and law so that his clients will be fairly and competently represented and their rights fully and adequately protected and preserved.") *see also In re M.,* 446 S.W.2d 508, 513 (Mo. Ct.App.1969) (noting appointment of GAL "for an incompetent is not a bare technicality, ... and that the office involves more than perfunctory and shadowy duties").

{30} Here, Mother's attorney and GAL only passively participated in the TPR trial, did not present to the children's court any evidence or testimony or express Mother's wishes regarding the termination proceedings. *See In re Esperanza M.,* 1998–

NMCA–039, ¶ 40, 124 N.M. 735, 955 P.2d 204. Mother's attorney and GAL did not require CYFD to prove by clear and convincing evidence that Mother's parental rights should be terminated, nor did they file any proposed findings of fact or conclusions of law. *Cf. In re Burbanks,* 209 Neb. 676, 310 N.W.2d 138, 151 (1981) ("A guardian ad litem may not waive the substantive rights of the ward, but must require proper legal proof."); *see also* Rule 16–103 cmt. ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and ... should act with commitment and dedication to the interests of the client[.]").

{31} In sum, we hold that especially in light of Mother's established mental illness, it was improper for the children's court to presume upon Mother's absence and counsels' inconclusive statements that Mother "'acquiesce[d] in the loss of [her] fundamental rights.'" *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019 (quoting *Ohio Bell Tel. Co. v. Public Util., Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937)); *cf. Brookhart v. Janis,* 384 U.S. 1, 6–7, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (holding that criminal defendant was not bound by his attorney's representation that defendant would forego a full trial where evidence demonstrated defendant's intent not to plead guilty). We leave for another day consideration of CYFD's request that the civil rules of default be applied in those cases where a parent wilfully fails to appear for trial and defend the action.

## THE USE OF A PROFFER OF EVIDENCE

{32} Mother appeals only on the grounds that the children's court failed to protect her right to contest the termination of her parental rights. However, the proceedings below implicated an additional issue of fundamental concern: the procedural method CYFD utilized to meet its burden of proof.

{33} The children's court must enter its judgment regarding a TPR motion only with the utmost circumspection and caution. *See In re Termination of Parental Rights of Ronald A.,* 110 N.M. at 455, 797 P.2d at 244 ("[A]ctions to terminate [parental] right[s] must be conducted with scrupu-

lous fairness...."); *Barwin v. Reidy,* 62 N.M. 183, 191, 307 P.2d 175, 180 (1957) ("The judicial severance of the relation of parent and child ... should not be accomplished except under the most adequate safeguards against abuse ."); *In re Termination of Parental Rights of Reuben & Elizabeth O.,* 104 N.M. at 650, 725 P.2d at 850 ("Termination of parental rights is not a matter to be lightly taken."). Entering a decision based only upon a proffer of evidence ignores this key directive. We review this issue of our own initiative because it implicates the fundamental rights of a litigant. *See* Rule 12–216(B)(2).

{34} To sever a parent's legal relationship with his or her child, CYFD must demonstrate that (1) the affected children were abused or neglected, (2) the underlying causes of the abuse or neglect are not likely to change within the foreseeable future, and (3) CYFD has made reasonable efforts to help the parent cure the underlying causes of the abuse or neglect. *See* § 32A–4–28(B)(2). The proposed termination must also be in the child's best interest. *See* § 32A–4–28(A). Finally, except in cases where CYFD attempts to terminate a parent's rights to a child subject to the federal Indian Child Welfare Act, it must prove each statutory element by clear and convincing evidence. *See* NMSA 1978, § 32A–4–29(J) (1997).

{35} Given its burden and the nature of the liberty interests affected, CYFD's mere proffer of evidence was insufficient to support the children's court's determination. Furthermore, in the case of a mentally ill parent whose illness forms the basis of CYFD's proposed termination, evidence must include sufficient testimony to allow the court to make the statutorily required findings noted above. To hold otherwise would ignore the fundamental interests involved and CYFD's burden of proof.

{36} In so holding, we make clear a rule that is consistent with other procedures imposed by the Children's Code. For example, a court cannot accept a parent's admission to allegations contained in an abuse and neglect petition "without making such inquiry as shall satisfy the court that there is a factual

basis for the admission." Rule 10–307(D); *cf.* Rule 5–304(G) NMRA 1999 (imposing same requirement on district court accepting guilty plea in criminal trial). Also, in the summary judgment context, even if all of the underlying factual allegations are admitted, entry of judgment on a TPR motion will be precluded if CYFD has failed to make a prima facie showing that it is entitled to judgment as a matter of law. *See Joe R.,* 1997–NMSC–038, ¶¶ 20–21, 123 N.M. 711, 945 P.2d 76; *cf. In re Michael R.C.,* 1999–NMCA–036, ¶¶ 12–13, 126 N.M. 760, 975 P.2d 373 (noting that *Joe R.* is the only instance of the New Mexico Supreme Court's affirmance of summary judgment in TPR context). Thus, we hold that CYFD's mere proffer of evidence was insufficient to support termination of Mother's parental rights.

## CONCLUSION

{37} We hold that the lack of procedural safeguards afforded to protect Mother's fundamental interest in her children violated her right to due process. Accordingly, we reverse the decision below and remand this matter to the children's court for a new trial.

{38} **IT IS SO ORDERED.**

DONNELLY and BUSTAMANTE, JJ., concur.