**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2022-NMCA-063**

**Filing Date: July 29, 2021**

**No. A-1-CA-38499**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

      Petitioner-Appellee,

v.

**RUBEN C.,**

      Respondent-Appellant,

and

**MAISIE Y.,**

      Respondent,

**IN THE MATTER OF JUPITER C.,**
**JOVIAN C., JAYDEN C., and JAIZIE C.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Grace B. Duran, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

ChavezLaw, LLC
Rosenda M. Chavez

Sunland Park, NM

Guardian Ad Litem

**OPINION**

**MEDINA, Judge.**

**{1}**     Ruben C. (Father) and Maisie Y. (Mother) are the parents of Jupiter C., Jayden C., Jovian C., and Jaizie C. (collectively, Children). Children are eligible for enrollment with Father's tribe, the Choctaw Nation (the Nation), and are thus Indian children for purposes of the Indian Child Welfare Act of 1978 (ICWA).[1]

**{2}**     Upon petition by the Children, Youth and Families Department (CYFD), Children were adjudicated abused and neglected by Father and Mother. CYFD thereafter moved to terminate Father and Mother's parental rights. At the conclusion of concurrent termination of parental rights (TPR) trials, the district court terminated both Father and Mother's parental rights to Children.

**{3}**     On appeal, both parents separately challenged the district court's application of ICWA. We addressed Mother's appeal in *State ex rel. Children, Youth & Families Department v. Maisie Y.*, 2021-NMCA-023, 489 P.3d 964. Although this Court reversed and remanded Mother's case for a new TPR trial on other grounds, we clarified New Mexico law regarding standards of proof in termination of parental rights cases subject to ICWA. *See id.* ¶ 11. Specifically, we held that in cases subject to ICWA, New Mexico law requires the following: (1) all grounds to terminate parental rights, including determinations of abuse and neglect, must be proven beyond a reasonable doubt; (2) judicial notice of prior adjudications of abuse and neglect made under the clear and convincing evidence standard, without more, is insufficient; and (3) the active efforts requirement of ICWA must be proven beyond a reasonable doubt. *Id.* ¶¶ 16-31.

**{4}**     In light of our holdings in *Maisie Y.*, this appeal presents a number of novel issues including: (1) whether the presumption of retroactivity in civil cases applies to cases under the Abuse and Neglect Act (ANA) and if so, whether that presumption has been overcome here; (2) whether an exception to the requirement that issues be adequately preserved for review applies to the issues presented in Father's appeal; (3) whether our holdings in *Maisie Y.* require us to reverse the termination of Father's parental rights, despite Father's failure to preserve these claims of error; and finally, (4) if reversal is required, what remedy is appropriate on remand.

**{5}**     For the reasons discussed below, we conclude that (1) the presumption of retroactivity in civil cases applies to cases under the ANA, and that the presumption is not overcome in this instance; (2) the nature of the fundamental rights at stake in this

---

[1]*See* 25 U.S.C. § 1903(4) (2018) (defining an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe").

case, viewed in the context of ICWA, compel us to exercise our discretion to review Father's claims despite his failure to preserve the claims of error; (3) *Maisie Y.* requires reversal; and (4) the district court must hold a new TPR trial on remand.

## BACKGROUND

**{6}** A brief review of the events that led to the present appeal is warranted. We reserve discussion of additional facts as necessary to our analysis.

### Petitions and Adjudications of Abuse and Neglect

**{7}** In September 2017, CYFD filed a petition alleging that Jupiter C. (age seven years), Jovian C. (age five years), and Jayden C. (age two years and eleven months) (collectively, Older Children) were abused and neglected by Father and Mother. After CYFD notified the district court that Older Children were eligible for tribal enrollment and that ICWA applied, the Nation intervened in Older Children's case.

**{8}** Father and Mother pled no contest to neglect under NMSA 1978, Section 32A-4-2(G)(2) (2018) (defining a "neglected child" as one "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent").

**{9}** The following month, CYFD filed a petition alleging that Jaizie C. (Infant) was abused by Father and neglected by Mother.[2] Infant was also eligible for enrollment with the Nation, and the Nation intervened in the case. Father pled no contest to neglect under Section 32A-4-2(G)(2) in March 2018.

**{10}** Older Children and Infant's CYFD cases were consolidated, after which CYFD moved to terminate both Father and Mother's parental rights to Children.

### TPR Trial

**{11}** The district court held Father and Mother's TPR trials concurrently in 2019. The court heard testimony from Father and Mother, representatives from family treatment court, CYFD, therapists and substance abuse counselors, and an ICWA expert employed by the Nation. At the conclusion of the TPR trials, the district court issued its findings of fact and conclusions of law, and ordered Father and Mother's parental rights terminated in September 2019. Father and Mother both appealed the termination of their parental rights.

### *Maisie Y.*

**{12}** As stated, we resolved Mother's appeal earlier this year in *Maisie Y.*, 2021-NMCA-023. To summarize, we held that (1) NMSA 1978, Section 32A-4-29(I) (2009)

---

[2]Infant was born after CYFD's September 2017 petition of abuse and neglect as to Older Children.

requires that all grounds to terminate parental rights in ICWA cases, including determinations of abuse and neglect under NMSA 1978, Section 32A-4-28(B)(2) (2005), be proven beyond a reasonable doubt; (2) in cases subject to ICWA, judicial notice of prior adjudications of abuse and neglect made under the clear and convincing evidence standard, without more, is insufficient to meet the requirements of Section 32A-4-29(I); and (3) as a matter of New Mexico law under Section 32A-4-29(I), the active efforts requirement of 25 U.S.C. § 1912(d) (2018) must be proven beyond a reasonable doubt.[3] *See Maisie Y.*, 2021-NMCA-023, ¶¶ 16-31.

**DISCUSSION**

**{13}**    Father raises two arguments on appeal. First, Father argues that the district court refused to apply the appropriate burden of proof under ICWA to terminate his parental rights. Second, Father argues that because CYFD failed to provide him a reasonable accommodation under the Americans with Disabilities Act (ADA), it did not meet ICWA's active efforts requirement. This appeal provides us an opportunity to explain how *Maisie Y.* impacts not only Father's case, but all ongoing cases pending in district court and those on direct appeal as of March 3, 2021—the date on which *Maisie Y.* was published.

**{14}**    We ordered supplemental briefing on a number of questions regarding application of our holdings in *Maisie Y.* to Father's appeal, including (1) whether the presumption of retroactivity in civil cases also applies in abuse and neglect cases; (2) if so, whether that presumption is overcome; (3) even though Father did not preserve the issues he raises on appeal, whether the holdings in *Maisie Y.* require reversal; and (4) if the holdings in *Maisie Y.* were to be applied to Father's case, what the appropriate remedy is on remand. We address each question in turn.

**I.    The Presumption of Retroactivity Applies to Abuse and Neglect Cases**

**{15}**    As a matter of first impression in New Mexico we first address whether the presumption of retroactivity that applies to civil cases also applies to cases under the ANA.[4] Before doing so, we pause briefly to summarize some general principles of New Mexico law regarding retroactivity.

**{16}**    Retroactivity refers to how a new rule of law announced by an appellate court should be applied to other cases. *See id.* ¶ 1 (describing how a new rule of law should be applied is "one of the great jurisprudential debates of the twentieth century"). " 'Retroactivity' jurisprudence is concerned with whether, as a categorical matter, a new

---

[3]In so ruling, this Court overruled our previous decision in *State ex rel. Children, Youth & Families Department v. Yodell B.*, 2016-NMCA-029, ¶ 21, 367 P.3d 881, *overruled by Maisie Y.*, 2021-NMCA-023, ¶¶ 23, 29, 31, to the extent it was inconsistent with the holding announced in *Maisie Y.*
[4]We do not address today whether new rules of law announced by appellate courts in abuse and neglect cases should receive universal retroactive application for all ongoing cases pending in district court or on direct appeal. *See Beavers v. Johnson Controls World Servs., Inc.*, 1994-NMSC-094, ¶ 19, 118 N.M. 391, 881 P.2d 1376 (discussing rationales for a rule of universal retroactivity).

rule is available on direct review as a potential ground for relief[.]" 21 C.J.S. *Courts* § 196 (2021).

**{17}** Generally, three options are available to an appellate court as it considers how a new rule of law should apply. First, a new rule of law can have pure prospective effect meaning that the new rule applies only to conduct occurring after the decision; in other words, the new rule would "not even apply to the litigants before the court announcing the decision." *Beavers*, 1994-NMSC-094, ¶ 18 n.7. Second, a new rule of law can have retroactive effect wherein "a decision applies not only to acts occurring after announcement of the decision and to the litigants before the court, but also to acts occurring before the announcement." *Id.* And third, a new rule of law can apply with selective or modified prospective effect, meaning that the new rule applies "to the parties in the case in which the decision is announced, whose conduct obviously occurred before the announcement of the decision, but thereafter only to parties whose conduct occurs after the announcement." *Id.*

**{18}** Because we have already applied our holdings in *Maisie Y.* to Mother, implicitly rejecting purely prospective application of those holdings, the question before us here is whether to apply *Maisie Y.* with retroactive effect or with selective prospective effect. To answer that question, we must determine whether to begin our analysis with a presumption of retroactivity.

**{19}** In civil cases, our courts presume retroactive application of new rules. *See Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 45, 378 P.3d 13 (citing *Beavers*, 1994-NMSC-094, ¶¶ 20-22). In *Beavers*, our Supreme Court explained that this presumption was adopted "[b]ecause of the compelling force of the desirability of treating similarly situated parties alike[.]" 1994-NMSC-094, ¶ 22. "As with the converse presumption of prospectivity in the legislative arena," the *Beavers* Court explained, "the retroactivity presumption for judicial decisions can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with modified or selective (or even, perhaps, pure) prospectivity." *Id.* "When such a statement is lacking, there is a presumption of retroactivity for a new rule imposed by a judicial decision in a civil case." *Edenburn v. N.M. Dep't of Health*, 2013-NMCA-045, ¶ 27, 299 P.3d 424 (internal quotation marks and citation omitted).

**{20}** Because we made no statement in *Maisie Y.* as to how our holdings were to apply to other cases, we ordered the parties to brief whether the presumption of retroactivity applies in abuse and neglect cases. We understand Father to argue that it does apply. CYFD contends that it does not apply because child protection laws derive from statute rather than common law and because of the unique nature of civil child abuse and neglect cases, including the interests at stake in such cases. CYFD states that although it has done nationwide research, it has found no civil child abuse and neglect cases in which courts in other states have applied judicially-established rules retroactively, and CYFD speculates that the nature of abuse and neglect cases might explain the absence of such cases. But our research reveals that these cases do exist, and that some of them retroactively apply a new rule regarding the appropriate standard

of proof. *See, e.g.*, *In re Kanjia*, 866 N.W.2d 862, 870 (Mich. Ct. App. 2014) (applying full retroactivity to judicial decision announcing new rule regarding procedural due process in child protective proceedings); *In re Adoption of Gabe*, 995 N.E.2d 1118, 1123-24 (Mass. App. Ct. 2013) (giving retroactive effect to judicial decision announcing the right to counsel for indigent parents in termination proceedings); *People in Interest of S.H.*, 323 N.W.2d 851, 852 (S.D. 1982) (applying retroactive effect to United States Supreme Court case concerning standard of proof for abuse and neglect adjudication proceedings and termination of parental rights proceedings). These cases persuade us that retroactivity is not categorically incompatible with civil abuse and neglect cases[5] because of the nature of those cases.

**{21}** We are thus left to consider whether the characteristics that distinguish abuse and neglect cases from ordinary civil proceedings justify dispensing with the presumption of retroactivity afforded to civil cases.

**{22}** Contrary to CYFD's position, we are convinced that the nature of civil child abuse and neglect cases warrants (at least) the presumption of retroactivity that New Mexico's courts apply in civil cases. As stated, CYFD posits that the interests at stake in civil child abuse and neglect cases support a conclusion that the presumption of retroactivity should not apply—that is, "because what is at stake differs from civil litigation and criminal cases: more than property and monetary interests typical of civil cases but not quite the personal liberty interests at stake in criminal cases." While we agree with CYFD's starting point that the stakes in abuse and neglect cases are different than those in civil and criminal cases, we arrive at the opposite conclusion—that is, the important interests involved in such cases are precisely why the presumption of retroactivity should apply. We explain.

**{23}** The ANA—our statutory framework for addressing child abuse and neglect in this state—was enacted "to protect children and adjudicate parental rights." *In re Pamela A.G.*, 2006-NMSC-019, ¶ 11. In applying the ANA, our courts must be careful to respect the "fundamental liberty interest" that parents have "in the care, custody, and control of their children." *Id.* That interest is "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982) (internal quotation marks and citation omitted). And in *Beavers*, our Supreme Court decided that the interests at stake in civil cases—which CYFD aptly characterizes as "property and monetary interests"—are, by their nature, worthy of a presumption of retroactivity so as to ensure that similarly situated parties are treated equitably. *See* 1994-NMSC-094, ¶ 19. Because abuse and neglect proceedings involve interests that are much more weighty than the interests involved in

---

[5]In *In re Pamela A.G.*, our Supreme Court determined that "neglect and abuse proceedings are civil proceedings[.]" 2006-NMSC-019, ¶ 12, 139 N.M. 459, 134 P.3d 746. With this in mind, our Supreme Court—through the exercise of its rule-making authority—has determined that such cases under the Children's Code are to be governed by the rules of civil procedure. *See, e.g.*, *State v. Arnold*, 1947-NMSC-043, ¶ 7, 51 N.M. 311, 183 P.2d 845 ("[The New Mexico Supreme Court] possesses unquestioned power to make rules touching pleading, practice and procedure."); *see also* Rule 10-101(A)(5) NMRA ("Except as specifically provided by these rules, the following rules of procedure shall govern proceedings under the Children's Code: . . . [T]he Children's Code and the Rules of Civil Procedure for the [d]istrict [c]ourts govern the procedure in all other proceedings under the Children's Code.").

ordinary civil proceedings, the equitable treatment rationale that justified the presumption of retroactivity for civil cases applies with even more force in abuse and neglect proceedings.

**{24}** Based on the importance of the especially significant interests at stake for children and parents in cases involving the ANA, as well as the need to eliminate disparate outcomes in such cases simply by virtue of the position of a case on our judicial docket, we hold that the presumption of retroactivity in ordinary civil cases also applies to abuse and neglect cases.

## II. The Presumption of Retroactivity Is Not Overcome as to Each Holding in *Maisie Y.*

**{25}** Having concluded that the presumption of retroactivity applies to abuse and neglect cases, we next determine whether that presumption is overcome in relation to each of our holdings in *Maisie Y.* by a "sufficiently weighty combination of one or more of the *Chevron Oil* factors[.]"[6] *Beavers*, 1994-NMSC-094, ¶ 22.

**{26}** In testing the presumption of retroactivity, the *Beavers/Chevron Oil* factors include consideration of the following:

> *First*, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.
>
> *Second*, it has been stressed that we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further retard its operation.
>
> *Finally*, we have weighed the inequity imposed by retroactive application, for where a decision of [the appellate courts] could produce substantial inequitable results if applied retroactively, there is ample basis in our cases avoiding the injustice or hardship by a holding of nonretroactivity.

---

[6]We note that although the United States Supreme Court overruled *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), in *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), our Supreme Court rejected the possibility that New Mexico's continued reliance on the *Chevron Oil* factors was misplaced as a matter of state law. *See Beavers*, 1994-NMSC-094, ¶ 18 ("We therefore decline to follow the Supreme Court's lead in holding that we lack the power to apply a new rule prospectively—whether the rule is derived from overruling a past precedent or fashioning a new precedent[.]"). Accordingly, the *Chevron Oil* factors remain the framework by which New Mexico appellate courts assess whether the presumption of retroactivity in civil cases is overcome. *See generally Beavers*, 1994-NMSC-094, ¶ 22. We refer to these factors throughout this opinion as "the *Beavers/Chevron Oil* factors."

*Stein v. Alpine Sports, Inc.*, 1998-NMSC-040, ¶ 9, 126 N.M. 258, 968 P.2d 769 (alterations, omission, internal quotation marks, and citation omitted).

**{27}** For the sake of clarity, we review each holding in *Maisie Y.* separately to determine whether the presumption of retroactivity is overcome.

## A. The Standard of Proof for All Termination Grounds in ICWA Cases

**{28}** We begin with our first holding in *Maisie Y.* that Section 32A-4-29(I) requires that all grounds to terminate parental rights in ICWA cases, including determinations of abuse and neglect under Section 32A-4-28(B)(2), be proven beyond a reasonable doubt. *See Maisie Y.*, 2021-NMCA-023, ¶ 19.

**{29}** The first *Beavers/Chevron Oil* factor requires a determination that a new rule of law has been announced in the case, which is to be applied retroactively. *See Beavers*, 1994-NMSC-094, ¶ 22. The first holding in *Maisie Y.* "clarified that the beyond a reasonable doubt standard applies to abuse and neglect determinations in TPR proceedings in which the ICWA applies[.]" 2021-NMCA-023, ¶ 20. CYFD concedes that this is not a new rule, and we accept the concession. Since this result was foreseeable as a matter of statutory interpretation based on a plain reading of Section 32A-4-29(I), we do not consider it a new rule for purposes of our retroactivity analysis. *See Maisie Y.*, 2021-NMCA-023, ¶ 19 (giving effect to the unambiguous language of Section 32A-4-29(I)); *Gomez v. Chavarria*, 2009-NMCA-035, ¶ 14, 146 N.M. 46, 206 P.3d 157 ("Given what we believe is the only reasonable construction of the statutes at issue here, we hold that the [retroactivity] elements . . . are not met.").

**{30}** Because our holding in *Maisie Y.* regarding the standard of proof applicable to all grounds for termination, including abuse and neglect determinations, in ICWA cases did not announce a new rule, the presumption of retroactivity is not overcome. *See Beavers*, 1994-NMSC-094, ¶ 23 ("[T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed."); *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 41, 306 P.3d 480 (holding that, where no new rule was created, the defendant failed to overcome the presumption of retroactivity, without considering the other two factors of the retroactivity test); *Edenburn*, 2013-NMCA-045, ¶ 31 (explaining that the presumption of retroactivity is not defeated in instances where no new rule was created).

## B. Judicial Notice of Prior Adjudications of Abuse and Neglect

**{31}** Our second holding in *Maisie Y.* was that, in cases governed by ICWA, judicial notice of prior adjudications of abuse and neglect made under the clear and convincing evidence standard—without additional evidentiary findings—is insufficient to meet the requirements of Section 32A-4-29(I). *Maisie Y.*, 2021-NMCA-023, ¶¶ 20-21.

**{32}** As CYFD concedes, this is not a new rule of law, but rather application of our plain reading of Section 32A-4-29(I). *See Maisie Y.*, 2021-NMCA-023, ¶ 21; *Gomez*, 2009-NMCA-035, ¶ 14. Accordingly, this factor does not overcome the presumption of retroactivity. *See Beavers*, 1994-NMSC-094, ¶ 23; *Figueroa*, 2013-NMCA-077, ¶ 41; *Edenburn*, 2013-NMCA-045, ¶ 31.

## C.     The Standard of Proof for Active Efforts

**{33}** Lastly, we reach our third holding in *Maisie Y.* regarding the burden of proof required for active efforts. Consistent with the plain language of Section 32A-4-29(I), we held in *Maisie Y.* that the active efforts requirement under ICWA, as a matter of state law, must be proven beyond a reasonable doubt. *See* 2021-NMCA-023, ¶ 23. In its supplemental brief, CYFD takes the position that the presumption of retroactivity is overcome with respect to this holding. We disagree.

**{34}** The first *Beavers/Chevron Oil* factor is clear here: *Maisie Y.* established a new rule of law with respect to the standard of proof for ICWA's active efforts requirement by overruling *Yodell B.* on this point. *See Maisie Y.*, 2021-NMCA-023, ¶¶ 23, 29, 31. Specifically, *Maisie Y.* created a new rule of law that requires CYFD to prove beyond a reasonable doubt that it made active efforts. *See id.* This new rule of law "overrul[ed] clear past precedent on which litigants may have relied[.]" *Beavers*, 1994-NMSC-094, ¶ 23.

**{35}** Our analysis does not end there, however, as the first *Beavers/Chevron Oil* factor also "requires determining the extent to which the parties or others have relied on the overruled precedent." *Stein*, 1998-NMSC-040, ¶ 11. "The extent to which the parties in a lawsuit, or others, may have relied on the state of the law before a law-changing decision has been issued can hardly be overemphasized." *Beavers*, 1994-NMSC-094, ¶ 27.

**{36}** Here, Father, CYFD, and the district court relied on the standard of proof in *Yodell B.* for determining whether CYFD had made sufficient active efforts—that is, under a clear and convincing evidence standard. Parties in other pending cases may have also relied on *Yodell B.* This reliance on the standard in *Yodell B.* weighs against retroactivity in this case. *See Stein*, 1998-NMSC-040, ¶ 11.

**{37}** "The second factor requires consideration of the new rule's history, including its purpose and effect and whether retroactive application would further the rule's purpose." *Id.* ¶ 12; *see Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 19, 148 N.M. 405, 237 P.3d 707 ("When interpreting statutes, we seek to give effect to legislative intent by looking to the language used and considering the statute's history and background." (alteration, internal quotation marks, and citation omitted)). Our holding in *Maisie Y.* clarifying the standard of proof required to satisfy ICWA's active efforts requirement, as a matter of state law, was necessary for two reasons.

**{38}** First, this conclusion gave effect to the Legislature's intent that, in cases in which ICWA applies, all grounds to terminate parental rights must be proven beyond a reasonable doubt. *See Maisie Y.*, 2021-NMCA-023, ¶ 29 ("In New Mexico, the unambiguous language used in Section 32A-4-29(I) clearly evinces our Legislature's intent to impose a higher burden of proof to the grounds supporting parental terminations in ICWA cases."). Application of this standard to all grounds used toward the termination of parental rights in proceedings subject to ICWA means that, at the conclusion of a TPR trial, the district court must be firmly convinced that (1) the underlying abuse and neglect has been proven beyond a reasonable doubt; (2) active efforts have been made to prevent the breakup of the Indian family and those efforts have proven unsuccessful; and (3) the continued custody of the Indian child by the parent whose rights are at issue would likely result in serious emotional or physical damage to the child. *See Maisie Y.*, 2021-NMCA-023, ¶¶ 19-21, 24, 33; *cf.* UJI 14-5060 NMRA ("A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.").

**{39}** Only through application of our legal system's most exacting standard of proof to all grounds for termination of parental rights can New Mexico advance ICWA's underlying purpose "to prevent the unnecessary removal of Indian children." *State ex rel. Children, Youth & Families Dep't v. Marlene C.*, 2011-NMSC-005, ¶ 19, 149 N.M. 315, 248 P.3d 863; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 56-57 (1989) (Stevens, J., dissenting) ("[ICWA] provides that any party seeking to effect a foster care placement of, or involuntary termination of parental rights to, an Indian child must establish *by stringent standards of proof* that efforts have been made to prevent the breakup of the Indian family, and that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child." (emphases added)).

**{40}** Second, our holding in *Maisie Y.* bolsters the purpose and intent of ICWA itself. "In 1978, Congress found 'that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children' and 'that the States . . . have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.' " *In re Dependency of G.J.A.*, 489 P.3d 631 (Wash. 2021) (quoting 25 U.S.C. § 1901(3), (5)). To curb the rampant removal of Indian children from their families by nontribal actors, ICWA "established minimum federal jurisdictional, procedural and substantive standards aimed to achieve the dual purposes of protecting the right of an Indian child to live with an Indian family and to stabilize and foster continued tribal existence." National Indian Law Library, *A Practical Guide to the Indian Child Welfare Act*, https://www.narf.org/nill/documents/icwa/ch1.html. Our decision in *Maisie Y.* recognized the Legislature's intent to further ICWA's objectives through its requirement that all grounds to terminate a parent's rights to an Indian child must be proven beyond a reasonable doubt as a matter of state law under Section 32A-4-29(I). *See Maisie Y.*, 2021-NMCA-023, ¶¶ 17-19.

**{41}** The third *Beavers/Chevron Oil* factor considers "the inequity imposed by retroactive application." *Stein*, 1998-NMSC-040, ¶ 9. In his dissent in *Santosky*, Justice Rehnquist opined that "[f]ew consequences of judicial action are so grave as the severance of natural family ties." 455 U.S. at 787 (Rehnquist, J., dissenting). We bear this sentiment in mind as we contemplate the inequity for which we would be responsible if this Court were to *not* apply the more stringent standard of proof for active efforts to Father's case after having reversed and remanded Mother's termination of parental rights to Children for a new TPR trial. *See Maisie Y.*, 2021-NMCA-023, ¶ 33. In this respect, considerations of equity are particularly weighty. To conclude that our ruling regarding active efforts in *Maisie Y.* does not apply in Father's case would be to produce the inequitable results between similarly situated parties that the adoption of the presumption of retroactivity in civil cases is meant to prevent. *See Beavers*, 1994-NMSC-094, ¶ 23.

**{42}** Notwithstanding the justifiable reliance placed by the parties and the district court on the standard of proof for active efforts articulated in *Yodell B.*, reliance alone does not lead us to conclude that our active efforts holding in *Maisie Y.* should not be given retroactive effect. Rather, furthering legislative intent and preventing a miscarriage of justice—especially between two parents in the same family—takes precedence. Considered together, we are not satisfied that the *Beavers/Chevron Oil* factors are sufficiently weighty so as to overcome the presumption of retroactivity with respect to our holding in *Maisie Y.* regarding active efforts. *See Beavers*, 1994-NMSC-094, ¶ 22.

**{43}** Accordingly, we determine that each of our holdings in *Maisie Y.* are to operate with retroactive effect in all ongoing cases pending in district court and on direct appeal as of March 3, 2021—the date on which *Maisie Y.* was published. However, application of these holdings to Father's case is dependent on whether an exception to the preservation requirement exists, which we consider next.

## III.    Review of Unpreserved Issues

**{44}** Father did not preserve the issues that are given retroactive effect in this opinion.[7] As a result, we ordered the parties to brief whether this Court should review these issues, assuming retroactive application of our holdings in *Maisie Y.*, notwithstanding lack of preservation. In response, Father argues that review is warranted under either the plain error or fundamental rights exceptions to our preservation requirements. Because we conclude that we can, and should, review Father's claims under the fundamental rights exception, we do not address Father's alternative contention that his claims may be reviewed for plain error.

**{45}** Our appellate rules provide that to preserve an issue for review "it must appear that a ruling or decision by the trial court was fairly invoked." Rule 12-321(A). In

---

[7]Father disputes the contention that he did not adequately preserve his arguments in his brief in chief. In making this argument, Father appears to conflate the preservation requirement of timely objections in the proceedings below with that of adequate briefing. *Compare* Rule 12-321(A) (requirements preservation for appellate review), *with* Rule 12-318(A)(4) (appellate rules for briefing).

*Diversey Corp. v. Chem-Source Corp.*, this Court explained that preservation is not a "technical bar to review" but instead an "extraordinary[ily] importan[t]" requirement. 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332. Preservation "can prevent the need for appeal entirely by allowing the trial court to correct errors, and when appeal is necessary, preservation creates a record from which this Court can make informed decisions." *Id.* (citation omitted).

{46}    However, our appellate rules recognize an exception to the preservation requirement for issues related to the fundamental rights of a party. *See* Rule 12-321(B)(2)(d). The earliest description of this exception dates to *State v. Garcia*, in which our Supreme Court noted:

> There exists in every court, however, an inherent power to see that a man's fundamental rights are protected in every case. Where a man's fundamental rights have been violated, . . . this [C]ourt has the power, in its discretion, to relieve him and to see that the injustice is not done. . . . This [C]ourt, of course, will exercise this discretion very guardedly, and only where some fundamental right has been invaded[.]

1914-NMSC-065, 19 N.M. 414, 143 P. 1012 (Parker, J., motion for rehearing).

{47}    Our courts have repeatedly recognized that "the right to raise one's child is a fundamental right protected by the Fourteenth Amendment to the United States Constitution." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 18, 133 N.M. 827, 70 P.3d 1266; *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 24, 136 N.M. 53, 94 P.3d 796 ("A parent's fundamental liberty interest in the care, custody, and management of their children is well established."); *Ridenour v. Ridenour*, 1995-NMCA-072, ¶ 7, 120 N.M. 352, 901 P.2d 770 ("Clearly, case law recognizes parents' fundamental constitutional right to raise their children."). Because termination proceedings implicate a parent's fundamental right to the care, custody, and control of a child, application of the proper standard of proof is critical to ensuring due process is met. *See Santosky*, 455 U.S. at 754-55 ("The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact[-]finding, is to instruct the fact[-]finder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication." (internal quotation marks and citation omitted)); *State ex rel. Children, Youth & Families Department v. Stella P.*, 1999-NMCA-100, ¶ 14, 127 N.M. 699, 986 P.2d 495 (explaining that "proceedings affecting [a parent's legal relationship to their child] must also protect [their] right to due process").

{48}    Further, our application of this preservation exception to Father's case is, in our view, in harmony with the remedial character of ICWA. As our Supreme Court has observed, ICWA "is a remedial statute in that it was enacted to stem the 'alarmingly high percentage of Indian families' being separated by removal of children through custody proceedings." *Marlene C.*, 2011-NMSC-005, ¶17 (quoting 25 U.S.C. § 1901(4)). Application of the fundamental rights preservation exception in this instance furthers the

purpose of ICWA as the termination of Father's parental rights severed a fundamental bond not only between Father and Children, but also between culture and individual.

**{49}** Lastly, the facts of this case further support application of the fundamental rights exception in this instance. The termination of parental rights to Children presents a unique situation in which both Mother and Father had their rights terminated after concurrent TPR trials, but raised different issues on appeal. Having decided Mother's case first, were we to *not* apply those holdings to Father's case, we would be left with a fundamentally unfair outcome—that is, the standards of proof applied on remand to Mother's case would be higher than those applied to Father's case here on appeal. Such a disparate outcome is untenable.

**{50}** Considering the interests at stake, including Father's fundamental right to parent Children and the remedial character of ICWA; the nature of the error here; and the inequity that would result in this case were we not to apply an exception to our appellate rules governing preservation of issues, we exercise our discretion to review Father's appeal.

### IV. Application of *Maisie Y.* Requires Reversal and Remand of Father's Case for a New TPR Trial

**{51}** Exercising our discretion to review Father's appeal under the fundamental rights exception, we conclude that application of *Maisie Y.* to Father's case requires reversal of the district court's termination of Father's parental rights. We must now decide what the appropriate remedy on remand is.

**{52}** We conclude that the appropriate remedy on remand in Father's case is a new TPR trial in which the district court shall apply each of our holdings in *Maisie Y.*[8] To order any lesser remedy proves unworkable as it is possible that CYFD may not have presented additional evidence to meet the higher standards of proof required by *Maisie Y.*, and similarly, Father's defense may have also been different had the higher standards of proof been in place at the time of the TPR trial.

**{53}** Consistent with our previous examination of the principles underpinning the retroactive application of *Maisie Y.*, our opinion today confirms retroactive application of Section 32A-4-29(I). In so ruling, we give effect to the decisions of both Congress and the New Mexico Legislature that disruption to an Indian child's familial relationships warrant additional procedural and substantive standards. We are mindful that this opinion will extend a difficult period of uncertainty in the lives of Children, and those similarly situated. This consequence, however, is necessary to ensure that Father's

---

[8]Because we reverse and remand for a new TPR trial under the higher standards of proof articulated in *Maisie Y.*, we do not reach Father's ADA claim. *See Sheraden v. Black*, 1988-NMCA-016, ¶ 10, 107 N.M. 76, 752 P.2d 791 ("It is well settled in New Mexico that the function of a reviewing court on appeal is to correct erroneous results, not to correct errors that, even if corrected, would not change the result.").

fundamental right to parent Children can only be terminated upon a finding that all grounds necessary to support such an outcome are proven beyond a reasonable doubt.

**CONCLUSION**

**{54}** For the foregoing reasons, the district court's order terminating Father's parental rights is reversed, and we remand the case to the district court for a new TPR trial in which the standards of proof set forth in *Maisie Y.* are to be applied.

**{55}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**